versus Leoneetal. Is it Leoneetal or Leoneetal? Leoneetal, Your Honor. Leoneetal. Thank you. Good morning. Good morning. May it please the Court, I am Lawrence M. Otter. I represent the appellant, Dan Galena. I would like to reserve three minutes for rebuttal. The facts of this case are reasonably clear. As a matter of fact, the audio and video that we provided to the Court and was placed in evidence at trial shows exactly what happened at the Erie County Council meeting on the night of March 20, 2007. The legal issues in this case I Sunshine Law Objection Provision and the First Amendment. It's amazing to me, isn't it amazing to you, that Mr. Leone was presided for how many years, 20 something years? 32, he's the oldest. And he didn't know about the Pennsylvania Sunshine Act? That's what he testified to during the hearing. Isn't that amazing? I mean, how can somebody preside in a Pennsylvania county court, or not a county court, in a Pennsylvania court? It's a political subdivision. And not know this, I mean I live in Pennsylvania, unlike either of my colleagues here, and everybody knows about the Sunshine Act. Correct, Your Honor. Did you plead a violation of the Sunshine Act? I'm sorry? You didn't plead a violation of the Sunshine Act, did you? In my complaint, an amended complaint, it was in the basis of the complaint. Did you say that there's liability for violation of the Sunshine Act, or for violation of the First Amendment? The First Amendment is the basic claim here, but the Sunshine Law provides, when you look at the analysis of the court below, we get into the traditional time, place, and manner restrictions, which does present a question of law, but you have to take into account the fact situation of this case. And in reviewing the restrictions... What is the fact situation? Let me just ask you about what you just said. Basically, that Mr. Galena rose up at a portion of the meeting, and under the rights given to him by the Pennsylvania Sunshine Law, to object to something that he perceives as a violation of the law at any time in the proceeding. I mean, the law is pretty plain. I'm not aware of any Pennsylvania decisions on this point, and I have attached to my brief the interpretation of that by the executive and legislative branches of Pennsylvania government. But what I think the Pennsylvania Sunshine Law does is it opens a new door for one of the elements that you have to look at. I mean, there's a three-step test in looking at restrictions. Are they content-neutral, narrowly tailored to serve a government interest, and leave open ample alternatives of communication? Well, I suggest that you look at the third test, and the Pennsylvania law, by statute, mandates a form of alternative form of communication. It says you may do this at any time if you perceive this violation, and that's what... Well, if he's... Can he get up and interrupt the speaker while somebody else is a speaker? Well, I don't think he did that at this... No, but you say he can do it at any time. Doesn't he have to do it at an appropriate time? Well, appropriate... In this particular fact situation, Mr. Galena was objecting to the sleight of hand that the Erie County Council was doing on moving an ordinance from a first to second reading by amending the agenda. So therefore, he could not have known in advance that this was going to happen. But the agenda leaves time for public comment. Did he do it during the public comment time? Well, the public comment section is at the beginning of the meeting. If you don't know that they're going to amend the agenda, how can you comment? Therefore, the Sunshine Law gives you this opportunity to comment at that time, because if he perceives it to be a violation of the Sunshine Law... Isn't it true, though, that the First Amendment... I mean, I see the interplay, but that the state of Pennsylvania or the Commonwealth of Pennsylvania, by a Sunshine Act, can go beyond the terms of what the First Amendment might require? The First Amendment has constitutional imperatives for certain things, and we know them, but the state of Pennsylvania certainly can go much further if it wants, but then that doesn't make it a First Amendment violation. Well, I think once the speaker gets up to speak, that's when the First Amendment kicks in, and that's been my operative legal theory from the get-go in this case. Well, then take a step back to Judge Slover's question. She asked you, could your speaker get up at any point in time and interrupt anyone? And so I'm going to tweak that a little bit and ask, you're relying on the Sunshine Act as the predicate for your First Amendment claim. Is it your position that the Sunshine Act allows a speaker unfettered access to every governmental forum? A citizen can go into any meeting and speak at any time without any restraints put on them? Well, I think there are restraints, and if you look at subsection C of the public participation section of the Pennsylvania Sunshine Law, I'll read it to you, it says, Any person has the right to raise an objection at any time to a perceived violation of this chapter at any meeting of a board or council of a political subdivision or authority created by the political subdivision. Now, I think the operative thing here is there has to be a perceived violation of the Sunshine Law, and that's exactly what Mr. Galina saw at that meeting. So if you're reading that section, are you saying to us that they may object or they may object and then be heard? Well, I think the proper thing, you have to at least raise the objection and possibly the response, I think the proper response from the council would be possibly objection noted, or they may say, well, what is your objection? I mean, it's up to the person who's running the meeting. In this case, it was Mr. Leone, and obviously he took a somewhat different point of view at that time. On the record, the objection was obviously noted. He said objection. He was told you're out of order, and then obviously it devolved from there. Correct. So he had his opportunity to object. That's what the Sunshine Act, based on the section you just read, gives him. And not to be heard, I think his answer would be. He could object, but by the house of him, before he got. Well, that's the question. Yes, I mean, if you look. The section you just read doesn't say, does it, that you could be heard. You said it gives you the opportunity to object. Well, I think if you look at the form, it's a traditional governmental meeting, and it's akin to the public participation section, which the Sunshine Law also outlines. And the Erie County Administrative Code has that section. But in this particular case, because they pulled this fast one later on in the new business section, by moving an ordinance from first to second reading, that's when my client said, I object. That's a violation of the Sunshine Law and a violation of your own administrative code, which does not permit that unless it's an emergency. And this certainly was not an emergency. It turns out it's a routine thing they do. And, you know, that defense I don't think holds any water, as the Bonus Gate defendants have found out in Harrisburg. Everybody does it this way. That doesn't mean it's proper or correct. Does the Sunshine Act preempt any of the county administrative regulations? I think they're read, yes. They certainly, the objection provision certainly preempts that. And if you look at the Erie County Administrative Code and Section A, the general rule for public participation, they're pretty much simpatico. But they stop there. They don't go down to Section C. I never even raised that issue. It seems to me in reading the briefs that the whole issue of the Pennsylvania Sunshine Act seems to have been waived out of this case. I beg to disagree with the court below. Well, I have to do the same thing. That's why I raised it. I don't see where you pled damages for violation of the Sunshine Act. Well, you're limited in the damages. In the one count that I removed, and I think with all due respect that's a red herring, one of the provisions that the Sunshine Law allows you to do is void the ordinance that they voted on. But I filed this matter 40 days after the incident. There's a 30-day restriction on that. When it was pointed out to me, I voluntarily withdrew that. But still, the objection provision is replete throughout my complaint. The testimony, the audio, the video, the entire record is full of that. Let me pick up Dr. Rivas. They're not talking about reference to it. They're talking about did you plead it. Yes, I did. Could you show us where in the record were plaintiff's facial, First Amendment, and Section 710.1, parentheses, Pennsylvania Sunshine Law challenges raised and preserved? Well, throughout his ‑‑ No, no, specifically. We have the appendix. I have the appendix with us. Where did you raise it and preserve it? Well, it was part of the complaint and during the trial. Okay, where, what paragraph? Because I thought, I think you said this went on a First Amendment issue rather than violation of the Pennsylvania Sunshine Act. And I just want to see that it was preserved. The complaint. The causes of action are basically First Amendment causes of action. That's what it's called. It's called First Amendment complaints. But the, as Judge Greenway suggested, it's a condition precedent. Well, you do say, and pend in state law issues related to the Pennsylvania Sunshine Law. Correct. And Erie County Code. And that's what, exactly what my client said as he spoke. I respectfully suggest that the court below was in error and I ask that you reverse the decision. Did the jury give damages? I see that. Yes, they did. How much was it? $5,000. That's right, yeah. I notice in your brief, although in your notice of appeal you said, well, the court should reverse the denial of counsel fees because, of course, the court denied it, the district court, because of the fact it was dismissing the suit, but granting the judge was a matter of law. So, therefore, you couldn't get counsel fees. And you did raise that in your notice of appeal.  But the question I had, though, was I don't see that you briefed it at all. Well, I think it all hinges on your reversal and then the judge. I know that, but the question is, where in the brief do you, usually we say, well, if you want a particular relief, you have to ask for it in the brief, and I just didn't see it. Well, if you reverse, I then become the prevailing party and then the motion then should properly be acted on. The judge denied it as moved. You did ask for it in your wherefore clause in the complaint. Yeah. He asked for it in the notice of appeal. No, it just wasn't. Well, what would happen if we reversed and reinstated the verdict? I guess at that point the defendant could appeal. No, I don't know. He'd have to, of course, appeal now. Oh, I don't know. Oh, I don't know. I don't think he can appeal now. Okay. Thank you very much. Thank you. You saved some time for rebuttal, right? Yes. Okay. We'll hear you then. May it please the Court, my name is James. Well, we have to get on the disk. Am I close? I'm close enough. Yeah. I'm sorry. Now you are. Go ahead. I am James Martin, and I represent Fiore Leone in this case. Let me ask you a question that seems to have underlain our question. How can a citizen who comes to a public meeting preserve his or her right to The time for public comment comes before the new business, so that if somebody comes up and they want to make new business, as in this case, moving the meeting without the notice required by the rules. Where is the time for that person to object and make his objection noted? Well, in this particular case, he could have done just as another citizen did at the outset of the meeting during the public comment. But he didn't know at the outset of the meeting that they weren't going to How can you do that? He did not know that as a matter of certainty. Well, as a matter of non-certainty. What's the difference between certainty? Well, it had happened, Your Honor. In fact, Mr. Galina testified at the trial. He made notes on the number of times this same issue came up in prior hearings for the last 15 months, and it was almost 80 times. So? So he knew it was very likely they would do it again at this meeting. So, but he couldn't make that assumption, could he? Well, someone else did at that meeting. Another citizen did that during the public comment session. And they didn't think much of it either. I mean, they obviously violated their own rules. Well, I don't know that that's the case, Your Honor. That wasn't litigated. The other citizen took that position also. It's counsel's position. They're permitted to do this under the administrative code. And he could have also made that criticism at a subsequent meeting. It wasn't critical he'd do it that night. But the point was that they were voting then on the issue of when it would come up again. I don't know what a subsequent meeting. Well, Your Honor, it's our position that it's a reasonable restriction. The administrative code allots a certain amount of time. In fact, the Sunshine Act recognizes that a public body can allocate a certain amount of time for public comment and doesn't have to allow the citizenry to object any time they want to. And that's all that was going on here. Well, the Sunshine Act does say that, doesn't it? Pardon me? At any time, doesn't the Sunshine Act say that? The Sunshine Act only says that the citizen can object to a violation of the a perceived violation of the Sunshine Act at any time. It does say that. But if it says that, if I was sitting as a trial judge and somebody asked a question and another attorney objected, I think I would probably say, what is the basis for your objection? So, in other words, the word objection, it has some meaning. I understand that. But still, you wouldn't know why. I mean, why are you objecting? It doesn't tell you much. Mr. Leone ruled as he did because he did not think there was a violation of the Sunshine Act. But they threw Mr. Galena out. I mean, he didn't. An officer came and threw him out of the meeting. Because he persisted in interrupting the meeting at a point when he should not be doing that. Isn't your position that what the Sunshine Act permits you to do is object, not object and comment? Because if that's what the legislature wanted to do, they would have provided for an objection and comment, which is not what it says. Is that your position? Yes, sir, it is. But in addition to that, it's my position that this is not about the Sunshine Act, this case. This case is about the First Amendment. And the issue went to the jury was whether Mr. Leone intended to restrict the speech of Mr. Galena based on content or identity. And the jury found for Mr. Galena. They did. Why should we throw out the jury? I mean, the jury is the people. I mean, those are the people for whom this is written, the taxpayers. Why should we sustain throwing out their decision? You may not be surprised to discover that I agree with the district court judge. Well, of course, you're the appellee. But my question to you is, why should the district court have overturned the jury verdict? Because all we had in terms of evidence of any intent whatsoever to repress speech based on content or identity was that Mr. Leone was angry, that Mr. Galena in the past had said things he didn't like. But we also had a record here of Mr. Galena speaking 14 or 15 times at the correct time during meetings. Well, but not this meeting. We're just talking about this meeting, whether Mr. Leone's action in this meeting in having a guard, as soon as Mr. Galena got up, having a guard and escort him from the room without the opportunity to explain why the procedure that they were voting on violated the rules. Your Honor, that's not exactly what happened. Mr. Galena said, I object. And Mr. Leone ruled him out of order. Mr. Galena said, I object. And he ruled him out of order again. He said, I object. And Mr. Leone said, if you persist, I am going to have you removed. And then he persisted. So it wasn't like he just threw him out when he opened his mouth. You're a good lawyer. But all these were put before the jury. And the jury decided against you. So my question is, why should she go against the jury's ruling? Because when you put this in context, Your Honor, every time Mr. Galena or any other member of the public had spoken at the correct time, nothing adverse happened. They were allowed to speak without objection. In fact, that very night, another person voiced this very same objection during the proper time and was not thrown out of the meeting. And the objection didn't seem to affect what happened. They went ahead and did it, even though it violated the rules, by pushing the discussion ahead without the requisite notice. Your Honor, I don't think it's established that the rule was violated. That's what the plaintiff's contention is, but the defense does not admit that. On your First Amendment claim, on their First Amendment claim, sorry, your position is every other time that he has spoken during the hearing of the public portion of the meeting, he's been allowed to speak. That's correct. He's criticized Mr. Leone and others for actions that they've taken or omissions. And he, other than one other occasion, has never been interrupted. And then the only time that he has been interrupted was when he spoke during a portion of the meeting other than hearing of the public. That's correct, Your Honor. And that goes to Mr. Leone's state of mind. That's the issue in this case. There was a prior occasion, there was evidence on in January of the same year, that Mr. Gliena did the same thing and that he was ruled out of order by Mr. Leone and told that if he proceeded further, he would be removed. Now, I didn't put that in my statement of the record because Mr. Gliena did not admit that was true. He could not remember that. So it was my thought that we have to accept the evidence in his favor. That's the test, of course. Are you not amazed, as I am, that Mr. Leone didn't know about the Pencil on Your Sunshine Act? Your Honor, I think he knew about the Sunshine Act. He didn't say he didn't know about the Sunshine Act. He didn't think that. I thought he did. I thought when he was asked, I thought he did. It's my recollection of the record and the trial, Your Honor, that he testified that he was aware of the act, but he was unaware that Mr. Gliena had a right to interrupt the meeting at this point in time when he did under the Sunshine Act. And as a matter of fact, Your Honor, if you look at the Sunshine Act, it was not violated here. All the Sunshine Act provides is that the hearing has to be a public hearing, there has to be notice of the public notice of the hearing, and that all decisions have to be public. I think you get public notice, by the way, of a hearing that you were moving ahead the thing that he was objecting to. I mean... That was not in the notice, no. The notice was that the legislation was, the ordinance was going to be considered. I assume that the reason that they didn't, the plaintiff, didn't hinge the complaint on the Pennsylvania Sunshine Act was precisely because of what you said. But that was the, they hinged it on the First Amendment, people's right to get up and speak, certainly not to be escorted by a security guard out of the meeting. Your Honor, this Court has rules on when you can speak also, and trial courts do too, and other public bodies are permitted to have rules like that. And we think that this is one of those rules that you just can't speak anytime you want to. And that's what Mr. Galena was doing. And the evidence in toto indicates that there simply was, I mean, Mr. Galena, as the plaintiff, had an obligation to carry his burden of proof with specific evidence. And the jury found he did. Well, juries make mistakes too, Your Honor. Well. And that's what the district court. It's our obligation usually to uphold the jury's verdict if there's any evidence to support it. Well, I don't think there is any. That's our position. Obviously, that's why you're here. No, I understand that. I'm trying to find out where Leone testified that he didn't know about the Sunshine Act. My brief on page 12, let's see. On page 11, at the last paragraph, plaintiff testified that he believed the county council's voting on ordinances at the same meeting at which the first reading of those ordinances was made was a violation of the Sunshine Act and the Erie County Administrative Code. He objected to this procedure during the business portion of the meeting because he believed he had a right to do so under the Sunshine Act. Defendant testified that he did not think that this procedure violated the Sunshine Act or the Erie County Administrative Code, and he was unaware of any right on plaintiff's part to interrupt the business portion of the meeting to voice an objection to the proceedings. So he knew about the act, but he didn't know the... What it said. Yes, well, no... He didn't think this was a violation. He didn't think this was a violation. He knew about the act. Everybody, every public official knows about the Sunshine Act of Pennsylvania. So, you know, it's our position we have here a... reasonable restriction on speech. It deals with the time when you may speak. It is content neutral. Its purpose is to promote order and decorum in the proceeding. It was applied by Mr. Leone as the chairperson of County Council who had an obligation under the Administrative Code to maintain order and decorum. He, by the way, ordered the removal of Mr. Galena before he knew what Mr. Galena was complaining about. Yeah, how about that? And my point is, Your Honor, that he was not directing his ruling toward the substance of the comment. He was directing his ruling toward the procedural issue of speaking out of order. So the First Amendment was satisfied because he could stay re-objected, but that they had no First Amendment right at that time to give the basis for the objection. That's correct, Your Honor. There was no showing that the suppression of his speech, if I can call it that, you might not like that characterization, had anything to do, in effect, with what it was or with the content for a precluded basis. Yes, sir. Mr. Leone's only focus here was on the procedural issue. Whether he was wrong or not is beside the point. His focus was on the procedural issue. That was his state of mind, and there is really no evidence indicating otherwise. Any right to speak under the Sunshine Act is only important if Mr. Leone knew that Mr. Galena had a right to speak at that point in time. And again, if you look at the Sunshine Act, it simply doesn't apply here. Mr. Galena was dead wrong. If he sincerely believed that, the Sunshine Act was not being violated here. I just wondered, when I read this case, it didn't seem to be a tremendous amount involved whether this case had gone to our arbitration or mediation. It did not go to mediation in the district court, I don't believe. No, he was talking about the court of appeals. Oh, here? Yeah. It didn't seem to me the kind of a thing that maybe could be adjusted. Well, Your Honor, it's more the money. I mean, this issue is very important to public bodies in Pennsylvania. It's a very important point of principle. It was of interest to me that the district court thought and actually instructed the jury that under the First Amendment, the motivation of the speaker counts. Is that your understanding of the First Amendment? If you're restraining what a public body is doing, if the relief is not damages against an individual, state of mind is not important. But if you're talking about awarding damages against someone for violating someone's First Amendment rights, then the state of mind is of critical importance, and that's what we have here.  Thank you. Thank you. Just very briefly, I think. You have how many minutes? Three minutes. Three. Mr. Martin. Okay. There were only about 30 incidents that occurred over a two-year period, over 48 meetings. So it was about 50 to 60 percent, not 80. I think Mr. Martin just misspoke the number. But if you look in the trial transcript, pages 68, 69, and 70, that's where I asked Mr. Goldstein. Where is that in the appellate? 88, 89, and 90 in the reproduced record. In the appendix? Yes, in Appendix 2, Volume 2. I asked Mr. Leone, had he ever taken a course in Sunshine Law? No. Was he aware of this provision in Sunshine Law? No. Is he now aware of it? He's still not aware of it. I mean, that was an astonishing revelation, that even after he was confronted with this in his meeting, he still chose us to ignore it. And, you know, Erie County Council is a creature of the state. It's required to comply with state law and federal law, the First Amendment in particular. What was the jury asked? I haven't looked at the instructions. I mean, because they came out for your client. So what is it that they found? I'm sorry? Yeah, what was the question that was placed before the jury? Well, we had a jury. There was a verdict slip there that was very precise. It was agreed upon. Yeah, what was on it? That's what I'm asking. In other words, what factual or legal issue did the jury decide in your favor? All of them. We have the instructions. All of them is not an answer. I don't have that in front of me. It's in the record. What page of the appendix? Thank you. Go ahead. I don't have that information at my fingertips, but it's in there. It's two pages. Both myself and Mr. Martin agreed with that. The judge submitted it to the jury, and they came back unanimous on all the points, all the questions. It's that simple. Yeah, I think it's on. Oh, yes. It's on 1-4, the special interrogatories. Did you find, by preponderance of the evidence, that the defendant violated plaintiff's First Amendment rights by having him removed from the March 20th meeting? Do you find, by the preponderance of the evidence, the plaintiff suffered emotional and mental harm? Okay. But they didn't find that Mr. Leone acted maliciously or wantonly, and you both agreed on the interrogatories to the jury. Oh, yes. Okay. Just one final point. If you listen again, if you choose to, at the end, after he had Mr. Goleta removed, he said to the rest of the people in the audience, anybody else want to go? Yeah. That showed his motive. Okay. Thank you. Thank you. Can you come back, please? That shows his motive that day against your client? Yes, and the First Amendment protects both the speaker and his speech. Well, help me then, because your client was a regular visitor to those meetings. Yes. As I understand the record, your client's ability to freely express himself has gone unfettered in all of those visits to the meetings, his observances of the meetings, any time that he chose to speak, whatever the content was, he was permitted to speak other than, as I understand it, one instance when he did not speak during the hearing to the public portion of the meeting. Is that right? Yes, the March 20th meeting, the objection. No. My understanding is that there was one other time. Yeah, I believe so. All right. So on all of these other occasions where he freely speaks his mind and goes uninterrupted by Mr. Leone, this one time when he objects at a time, other than that it's because of the content of what he was going to say? I think it was both the content. That's what we should conjecture? Well, in the record, if you look, Mr. Leone also testified that prior to he admonished all the speakers that earlier that evening after they spoke, he said, we're, you know, we're annoyed. You're saying that we're criminals. We're doing the illegal stuff. I don't like it. We may take this matter to court. And then moments later, we get into this scenario where Galena stands up and says, wait a minute. I object to what you're doing. You're violating the code and you're violating the assumption. Let's stop for a moment. I think I know the point in time when you're talking about whatever Mr. Leone's comment was after the speaker spoke on that occasion and on prior occasions for both your client and others. Mr. Leone has never restricted or constricted their ability to speak critically of either he or other city council members. Well, unless you, unless you regard his statement, anybody else as suggesting. Well, I'm not talking about that day. I'm talking about prior to that. That may be true, but the, you know, the violation occurred on March 20th, the particular day at a particular time and the speech and the speaker were critical at that time. Right. But you, you, you want us to infer that anyone else means that it was a restriction or constriction of his ability to express himself on that day. And that's why I'm relating it to earlier times. I believe you may be correct, but I think it goes to show, I mean, it's clear that for whatever reason, Mr. Leone was agitated that day with the speaking public. Thank you. Thank you. Okay. Thank you. We'll take the matter under advisement.